* CITED in Deveney v. Mahoney, 8 C. E.Gr. 249.
The complainant was in partnership with the defendants, John Semple, William B. Semple, and S. K. Miller, under the name of Uhler, Semple Co. The suit is brought for a dissolution, a receiver, and an account; to have the stock of tools and machinery which these three defendants put in the partnership at an estimate of $15,000, alleged to be greatly excessive, appraised, and the excess of value allowed in the account; and to have a debt of these partners to the complainant for $8500 lent to them, and for which they promised to give him a first judgment on their interest in the partnership property, declared a lien upon their interest prior to judgments confessed and mortgages given to other defendants, who it is said had notice of the agreement to *Page 290 
give the complainant the first lien, and whose liens were therefore subject to that promise as an equitable mortgage.
The complainant entered into partnership with J. Semple, W. B. Semple, and Miller, by written articles, on the 26th day of December, 1864. The two Semples and Miller had, until then, been in partnership under the name of Semple Co., in manufacturing iron at their rolling mill and foundry at Easton, in Pennsylvania, and in an iron store for the sale of iron, at Easton. The same business was to be continued, but the rolling mill and foundry were to be removed to Phillipsburg, in this state. Uhler was to contribute to the capital $15,000 in cash, as equivalent to the tools and machinery of the others, valued at that sum, and was to purchase and pay for one half the stock in the iron store, at Easton, at an appraised value. The new firm was to remove the machinery, and Semple Co. were to furnish brick for three furnaces and one and a half stacks. Uhler was to have one half interest, and one half of the profits, and bear one half of the losses; each of the others one sixth; and each was to give his attention to the business. The new firm went into operation, and with the money of the firm bought a lot at Phillipsburg in the names of the four partners individually, and on it erected a large building, and removed the machinery from Easton to it. Uhler advanced or loaned to the firm $16,000, besides his contribution to the capital, and lent to the other partners $8500, for which they promised to give him a note and warrant of attorney to confess judgment, that he might make it a lien on their interest in the property. On this note judgment could have been entered in Pennsylvania, though not due. Finding that judgment could not be entered on this in New Jersey, and that a bond and warrant of attorney was the usual mode here, Uhler applied to them for a bond and warrant; this they gave, payable in one year, according to agreement, and gave it for $9124.87, the sum loaned, and one year's interest upon it. Uhler found that on this, judgment could not be entered in New Jersey. He says, that he then applied to them for *Page 291 
a mortgage, and that they said they were in negotiation with a stranger to purchase out his interest, and asked him to wait until they could find that he did not purchase, and then they would give him a mortgage; they deny this promise. The sale of Uhler's interest was not accomplished, and they did not give a new judgment bond or a mortgage, but gave mortgages and confessed judgments to the other defendants to protect them from their liabilities as endorsers for Semple Co. The interest of these three defendants in the store at Phillipsburg, was sold out by these judgments in Pennsylvania, and they claimed that these judgments and the mortgages given on the property are liens prior to the lien of the complainant. The other defendants deny all notice of any agreement to give Uhler a first lien on their interest in the property, as security for his loan to J. and W. B Semple, and Miller. The defendants allege that Uhler's claim for the $9124.87 is void as affected by usury, that the transaction was in Pennsylvania, where interest is not allowed above six per cent., and that seven per cent. was reserved on this loan. They also allege that Uhler had taken possession of the store at Easton, and as acting partner, sold it out at auction mainly to a bidder who bought for him, and claim that he must account for it at its real value, and not at the prices at this auction sale.
As to the over valuation of the machinery taken as the capital of Semple Co. in the new partnership, I am of opinion that Uhler cannot go back of the price agreed apon. He knew the machinery, saw it, and could have had it valued. They represented that it was worth over $15,000. It is the ordinary representation of value which is always held not to amount to a warranty on a sale, nor to a fraud, even when the seller knows the representation is not true. And there is no reason for applying a different rule to representations of the value of properly, put into a partnership as part of the capital. Uhler agreed, in the articles of partnership, to take this stock of the old firm at $15,000. They had valued it at $19,000; he refused to take it at that, but fixed an-other *Page 292 
value at which he agreed to take it. It is not unusual in taking a new partner into an established business, to put in the stock and machinery of the old business at a price fixed arbitrarily between the parties, as one of the conditions of the new arrangement. There is no confidential relation between partners until the partnership is formed; in the negotiations concerning it the parties are strangers, with adverse interests, each making the best terms for himself that he can obtain, and the established maxim of oaveat emptor applies. Neither can they be made liable in this court, or in any court, for their representations that $15,000 would be sufficient cash capital to carry on the business, or that the tools and machinery in their foundry were sufficient, or that the business would be profitable. These are representations of a kind that will not sustain an action.
One partner has a lien upon the partnership effects, for moneys advanced by him to the partnership beyond his share of the capital, and can retain it before the other partners, or their creditors or assignees, are entitled to receive any of the assets, but he has no such lien for money advanced or lent to an individual partner. A mortgage or judgment against such partner, if properly entered or recorded, will be a prior lien on such partner's share. I am much inclined to think that an agreement by such partner that the loan or debt should be a lien upon his share, and that he would execute a mortgage, would be considered an equitable mortgage, and would give preference over all subsequent judgments and mortgages to creditors with notice. But such equitable mortgage would not have preference over such judgment and mortgage to creditors having no notice of them; else an agreement to mortgage, or any other equitable mortgage, would be better than an actual mortgage that must be recorded to give priority over subsequent encumbrances. In this case there is no agreement proved to give a mortgage. Uhler alone testifies to it; the three partners deny it. There is no agreement proved to give a judgment, except such judgment bond or note as was given; it was to be on a year's *Page 293 
credit, and a year's interest was added, showing that this was carried out. It could not, by law, be made a lien in this state until due, although both parties may have supposed to the contrary, as in Pennsylvania it could have been made a lien on land. And I do not think that any decisions, or the principle on which they are founded, go so far as to declare that a promise to give a judgment bond, which may be made a lien on property, amounts to an equitable mortgage. But this question becomes, in this case, immaterial, because these creditors had no notice of such promise, if any was made. They deny it under oath, and there is no evidence to affect them with it in any degree. The fact that A. N. Semple was attesting witness to a judgment bond not due in a year, is no proof that he knew of a promise that Uhler should have, immediately, a first lien, and that there should be no prior lien. Nor does the fact that these judgments and mortgages were given to secure prior debts or liabilities, and that no new consideration was advanced, affect their prior equity in this state. The rule that a prior debt is not sufficient to make one a bona fide purchaser or mortgagee for value, has never been adopted in New Jersey. Our courts have uniformly held that it is a sufficient consideration to protect one holding the legal right, against the prior equity of one who has no legal right, when the other had no notice of such equity.
The Court of Errors, in Allaire v. Hartshorne, 1 Zab. 665, adopted the rule laid down by the Supreme Court of the United States, inSwift v. Tyson, 16 Pet. 1, and not the rule adopted in the state of New York, in the case of Stalker v. McDonald, 6 Hill 93. The opinion of the Court of Errors of New York in that case, delivered by Chancellor Walworth, contains all the authorities on that side.
Uhler's debt of $9124.87 is not affected by usury; it was contracted in Pennsylvania, and it does not appear, by any evidence, that seven per cent. is illegal in that state, or, if it is, that the validity of the contract is affected by it. The *Page 294 
laws of other states can only be brought to the knowledge of this court by proof.
Uhler must, without question, account for the goods in the iron store at their real value; an auction, at which he was the chief or only purchaser, cannot fix their value. The purchaser of the interest of the defendants, J. and W. B. Semple and Miller, in the goods in the iron store sold in Pennsylvania, on executions against them, cannot give the purchaser a right to their interest in the partnership effects in New Jersey, but only in the effects levied on. Else the sale of a wheelbarrow belonging to a firm, by virtue of a constable's execution against one partner, would vest the purchaser with the interest of that member in the whole partnership, though it amounted to $10,000.
The land and buildings, and machinery at Phillipsburg, bought with partnership funds for partnership uses, are partnership property, and must be applied to partnership debts, as if personal estate, free from any claim of dower therein, except in any excess over the part required for debts.
The proceeds of the sale of the partnership property, after payment of costs and necessary expenses, must be first applied to the payment of the debts of the firm, including the amount loaned by Uhler to the firm, and interest. The share of each partner in the residue, if any, will be in proportion to his interest in the firm; to Uhler one half, to each of the others one sixth.
John Drake and Archibald N. Semple were jointly liable, and also each of them was separately liable, as endorsers on notes for Semple Co., which were not yet due. Three mortgages were given to indemnify them from any loss by reason of these endorsements. A mortgage may be given to indemnify the mortgagee for being surety or endorser. This is a good consideration, and such mortgage will be valid as against subsequent purchasers or encumbrancers. These three mortgages are valid encumbrances, and have priority over any claim of the plaintiff, as to the real estate mortgaged. The assignments by John Semple and W. B. Semple, *Page 295 
to Drake and A. N. Semple, of all their interest in the partnership assets, were given by way of mortgage to secure them against these endorsements, and to give to Drake and A. N. Semple a prior lien on the shares of these two partners in the surplus, and are valid.
The sale of the interest of J. and W. B. Semple and Miller, in the iron store at Easton, by the sheriff of Northampton, as stated above, did not convey any interest except in the property levied on. That property, like the property at Phillipsburg and elsewhere, belonging to the partnership, was first subject to the partnership debts by the rule of law, and the share of W. B. Semple and John Semple was by their mortgage assignments, first subject to the amount for which Drake and A. N. Semple were security. These mortgage assignments were on the 9th, and the sheriff's sale on the 12th, of March, 1866. I know of no rule by which the debts shall be apportioned upon separate parcels of partnership property, when these parcels lie in different jurisdictions, and the interest of some of the partners in such parcels is sold separately, by execution or otherwise. The whole assets are subject to the payment of the partnership debts; these are a lien upon them by law. Any purchaser of the whole or a part, takes subject to that lien. The true rule seems to me to be, to hold each parcel liable to its share of the partnership debts, in proportion to its value. This is the rule adopted by the courts of equity in subjecting parcels of mortgaged premises to payment of the mortgage debt, when they are sold separately, and without covenants or warranty. When sold with warranty or covenants against encumbrances, the mortgage becomes a first lieu for the whole amount on the part retained by the vendor, and no part will be made out of the lands sold, if the part retained is sufficient. But here there is no warranty. The purchase of Drake, then, at this sheriff's sale, transferred to him the interest of each of these three partners in the goods in the Easton store, or rather the goods levied on, subject to their proper share of all the partnership debts; and the shares of the two Semples *Page 296 
were also subject to the three mortgage assignments made by them three days before.
If the share of the surplus of the partnership assets, after payment of debts and expenses, exceeds these liens held by Drake and A. N. Semple, the complainant will be entitled to have it paid to him upon his bond for $9124.87, of October 3d, 1865.
A. N. Semple and John Drake have no lien on the personal property in New Jersey, or on the debts due to Uhler, Semple Co., except by the mortgage assignments of the two Semples. These being of the surplus, give them the right to have the whole assets taken into account to ascertain that surplus.
If the amount of the sales of the real estate included in their mortgages, above its share of the partnership debts, and the amount received by virtue of their mortgage assignments, is not sufficient to discharge the liabilities of Semple Co. to them, they are creditors at large of Semple Co., for the balance, aud have no lien on the surplus, if any, belonging to Miller.
There must be a reference to a master, to take an account upon the principles settled, that a final decree may be made.
 *Page 178